# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action Number |
| ) | 07-00007-02/03-CR-W-HFS |
| Philip F. Cardarella and ) | |
| Katheryn J. Shields ) | |
| ) | |
| Defendant. ) | |

## Report and Recommendation

Pending before the Court is the MOTION TO DISMISS THE INDICTMENT DUE TO SELECTIVE AND VINDICTIVE PROSECUTION filed March 16, 2007 (Doc. #73) and the MOTION TO DISMISS THE INDICTMENT DUE TO THE UNCONSTITUTIONAL APPOINTMENT OF THE INTERIM UNITED STATES ATTORNEY also filed March 16, 2007 (Doc. #74) by defendants Philip F. Cardarella ("Cardarella") and Katheryn J. Shields ("Shields"). Having reviewed the pleadings of the parties, the Court concludes that no evidentiary hearing or discovery on the issues is required[1] and, for the reasons set out herein, the Court recommends that both motions to dismiss be denied.

---

[1] It is well settled that the decision as to whether to hold an evidentiary hearing and/or permit discovery is vested in the Court's discretion. In this case, as set out in more detail *infra*, the Court concludes that Cardarella and Shields have "failed to raise specific facts sufficient to raise a significant doubt that the government's decision to prosecute" them was vindictive or selective so as to warrant either an evidentiary hearing or discovery regarding their allegations. *See*, *e.g.*, *United States v. Kelley v. United States*, 152 F.3d 881, 886 (8th Cir. 1998); *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004) ("In order to obtain discovery, [a defendant] had to produce at least some credible showing of differential treatment).

The case involves an alleged attempt to defraud a lending agency in connection with the sale of a residence owned by Cardarella and Shields as husband and wife. The purported organizer of the fraudulent activity, co-defendant Ronald Zwego, is alleged to have created a false selling price for the residence of $1.2 million by utilizing an inflated appraisal and straw-party buyers (who would not repay the mortgage loan). Cardarella and Shields were going to receive $707,000 of the sales proceeds (essentially their asking price for their residence) with Zwego and other dividing the remaining sales proceeds.

In order to establish a *prima facie* case of selective prosecution, Cardarella and Shields must show (1) that people similarly situated to them were not prosecuted, and (2) the decision to prosecute them was motivated by a discriminatory purpose. *Hirsch*, 360 F.3d at 864; *United States v. Perry*, 152 F.3d 900, 903 (8th Cir. 1998). The burden on a criminal defendant has been appropriately[2] characterized as "a heavy one. . . requir[ing] a showing of intentional and purposeful discrimination." *United States v. Matter*, 818 F.2d 653, 654-55 (8th Cir. 1987) (*citations omitted*). In support of their allegation of selective prosecution, Cardarella and Shields note that in other mortgage fraud federal lawsuits in the Western District of Missouri, the home sellers have not been indicted. Responding to that bare assertion, the Government notes:

> [Not counting the current case], no less than thirteen mortgage fraud cases have been filed in the Western District of Missouri involving no less than twenty-three defendants. Over the last three years, these prosecutions have included all of the participants in the real estate transaction, including sellers.

---

[2] The burden is heavy because "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute and what charge to file . . . generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668 (1978).

2

Thereafter Shields and Cardarella filed a pleading with the Court noting that the Government had failed "to identify even one similarly-situated[3] home seller" and, as such, "the Government's burden" was not met. However, in fact, the burden of establishing a claim of selective prosecution lies <u>with the defendants</u> and not the Government. To that end, Cardarella and Shields have failed to meet their burden as to the first element of selective prosecution.

Moreover, even if there was evidence that Cardarella and Shields were being prosecuted for actions for which others have not been prosecuted by the U.S. Attorney's office, Cardarella and Shields would still bear the heavy burden of additionally establishing that the decision to prosecute them was motivated by a discriminatory purpose. Again, the evidence presented by Cardarella and Shields falls short on specific facts.

In the briefing with the Court, Shields alleges that she and her husband have been singled out for prosecution "because [Shields] is an outspoken, sometimes controversial, Democrat" and because she was about to enter the 2007 Kansas City, Missouri mayoral race, following her tenure of 12 years as the Jackson County (Mo.) Executive. Cardarella and Shields also point out that the U.S. Attorney who indicted them was appointed by a Republican administration that has come under recent media[4] scrutiny regarding the "politicalization" of the Department of Justice

---

[3] Cardarella and Shields distinguish the other home sellers who have been indicted in the Western District Missouri, arguing that those sellers were alleged to be the "hubs" of their respective fraudulent conspiracies. The degree of complicity in organizing and carrying out a conspiracy may be a factual difference when comparing cases, but it cannot serve as a basis for establishing a *prima facie* case of selective prosecution.

[4] The "evidence" primarily relied upon by Cardarella and Shield to support their claims of selective prosecution are mainly newspaper accounts of the scandal in Washington concerning the firing of U.S. Attorneys. Those allegations have recently been expanded to include, possibly, the former U.S. Attorney for the Western District of Missouri.

3

and the hiring/firing of U.S. Attorneys. While Cardarella and Shields raise many questions and advance several theories, they fail to produce any specific facts that might raise significant doubt as to the Government's decision to prosecute them and whether that decision could be characterized as a showing of intentional and purposeful discrimination so as to support a claim of selective prosecution.

In a similar vein, Cardarella and Shields further argue that their current prosecution is the result of a vendetta against them by the Department of Justice and the local U.S. Attorney's Office. In order to prevail on a claim of vindictive prosecution, Cardarella and Shields bear the burden of establishing governmental vindictiveness, in the sense of bad faith or malice. *Hursch*, 360 F.3d at 864; *Kelley*, 152 F.3d at 885. For similar reasons as set out above, while Cardarella and Shields raise many theories, they have come forward with no facts that relate to their particular prosecution. It is highly likely that, to some extent, most criminal defendants feel as if their prosecution is instead persecution. Without specific facts suggesting that the Government's motives were improper, the Court will not assume that vindictiveness lurks beneath this indictment.[5]

---

[5] Cardarella and Shields also raise an argument that the conduct of the prosecutors in seeking an indictment against them violated the provisions of the Hatch Act, 5 U.S.C. §§ 7321-26. The Court rejects the argument. Cardarella and Shields lack standing to assert an allegation of a violation of the Hatch Act against a government employee. Moreover, the Court concludes that even if the Hatch Act can be utilized by a criminal defendant to seek a dismissal of an indictment, the reach of the Hatch Act is no greater than the scope of dismissals for selective and/or vindictive prosecution. As such, the Court's findings regarding an insufficiency of evidence on those theories necessitates a similar finding as to any purported Hatch Act violation.

4

On March 24, 2006, the then-U.S. Attorney for the Western District of Missouri, Todd P. Graves, resigned from the office. Thereafter, pursuant to the provisions of 28 U.S.C. § 546(a), the Attorney General appointed Bradley J. Schlozman as the new U.S. Attorney. Mr. Schlozman was the U.S. Attorney at the time Cardarella and Shields were indicted. Cardarella and Shields finally argue that the indictment against them must be dismissed because the appointment of Mr. Schlozman as the U.S. Attorney was unconstitutional. The argument is frivolous.

As a general rule, U.S. Attorneys are nominated by the President and, if confirmed by the Senate, are then appointed by the President for a term of four years. 28 U.S.C. § 541(a-b). In the event that the office of the U.S. Attorney becomes vacant, the Attorney General is given the authority to appoint an Interim U.S. Attorney. Specifically, 28 U.S.C. § 546 provides:

> (a) Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.
>
> (b) The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.
>
> (c) A person appointed as United States attorney under this section may serve until the qualification of a United States Attorney for such district appointed by the President under section 541 of this title.

28 U.S.C. § 546. This provision was enacted into law on March 9, 2006, as part of the USA Patriot Improvement and Preauthorization Act of 2005, Pub.L. No. 109-177, § 502, 120 Stat. 192, 246 (2006).

Cardarella and Shields argue that section 546 is unconstitutional inasmuch as it permits

5

the appointment of U.S. Attorneys without subjecting them to confirmation by Senate pursuant to the Appointments Clause of the U.S. Constitution. U.S. CONST. art. II, §2, cl. 2. However, the Constitution itself does not require that U.S. attorneys be subjected to the advice and consent of the Senate. Indeed, the office of U.S. Attorney only came about because Congress created the position in the Judiciary Act of 1789. 1 Stat. 92-93. In that same statute, Congress decided to subject a President's appointment of a U.S. Attorney to the advice and consent of the Senate. However, for numerous practical reasons, provisions had to be made for the appointment of U.S. Attorneys for interim periods when one U.S. Attorney had left office, but no new U.S. Attorney had been confirmed by the Senate. Prior to the 2006 amendment to section 546, the law provided a slightly alternative means for handling such vacancies.

> (a) Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.
>
> (b) The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.
>
> (c) A person appointed as United States attorney under this section may serve until the earlier of–
>
>> (1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or
>>
>> (2) the expiration of 120 days after appointment by the Attorney General under this section.
>
> (d) If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.

28 U.S.C. § 546 (2005) [repealed].

Inasmuch as the prior version of section 546 was deemed constitutional, *see*, *e.g.*, *U.S. v.*

*Hilario*, 218 F.3d 19, 24-29 (1st Cir. 2000); *U. S. v. Solomon*, 216 F.Supp. 835, 840-43 (S.D.N.Y. 1963), it seems settled that there is no Constitutional defect with the employment of a method for appointing a U.S. Attorney without the advice and consent of the Senate. Without examining the wisdom of Congress' 2006 amendment to section 546, it seems evident that Congress – which initially created the position of U.S. Attorney and established the methodology for appointment to the position – is free to to change that appointment methodology, at least with respect to interim appointments.

Moreover, even if the the U.S. Attorney "interim appointment" provision of the Patriot Act is improper and unconstitutional, the indictment against Cardarella and Shields still would not be rendered invalid for that reason alone. Certainly, a district court lacks jurisdiction to entertain a criminal case if it appears that the Government "lacked power to prosecute the defendant." *United States v. Fitzhugh*, 78 F.3d 1326, 1330 (8th Cir.1996).[6] However, an appointment of a U.S. Attorney that is not made as provided by the Appointments Clause does not affect the Government's power to indict or prosecute a criminal defendant. Indeed, the law does not even require U.S. Attorneys to sign indictments in any criminal case, capital or otherwise. The law merely requires that the indictment must be signed "by an attorney for the government." FED. R. CRIM. P. 7(c)(1). In this case, the indictment against Cardarella and

---

[6] In *Fitzhugh,*, the Eighth Circuit held that an indictment obtained by an Independent Counsel who may have exceeded his authority did not affect the government's power to prosecute and thus did not deprive the district court of jurisdiction. *Id.; accord United States v. Easton*, 937 F.2d 160, 162 (5th Cir.1991) (holding that a district court's jurisdiction was not affected even though the Assistant U.S. Attorney who signed the indictment had been directed to do so by a United States Attorney who was disqualified to participate in the prosecution of the case); *United States v. Coppola*, 526 F.2d 764, 772-73 (10th Cir.1975) (implying that the presence of a Department of Justice "special attorney" in the grand jury room, in violation of FED. R. CRIM. P. 6(d), did not raise a jurisdictional issue).

7

Shields was signed by an Assistant U.S. Attorney, Linda Parker Marshall. There is certainly no evidence in this case that Ms. Marshall was not a legally authorized attorney for the government at the time the indictment was handed down.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO DISMISS THE INDICTMENT DUE TO SELECTIVE AND VINDICTIVE PROSECUTION filed March 16, 2007 (Doc. #73) and the MOTION TO DISMISS THE INDICTMENT DUE TO THE UNCONSTITUTIONAL APPOINTMENT OF THE INTERIM UNITED STATES ATTORNEY also filed March 16, 2007 (Doc. #74) by defendants Philip F. Cardarella and Katheryn J. Shields.

Counsel are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                              */s/ John T. Maughmer*
                                              **John T. Maughmer**
                                        **United States Magistrate Judge**